## Engstrom v. Siegel

*H. S. Hampson*, for petitioners.

*R. O'Sheill*, for respondent.

*D. W. Swanson*, for Recorder's Office.

FLICK, P. J., March 25, 1965.—The petition of Arthur J. Engstrom and Irene H. Engstrom, husband and wife, avers that on August 23, 1962, they executed an oil and gas lease on land owned by them in Sugargrove Township, Warren County, about 107 acres, to the respondent, Charles J. Siegel, which lease was recorded on December 6, 1962, in the Recorder's Office of Warren County in Deed Book 325 at pages 154 and 155. Petitioners claim the lease is not a recordable instrument under the law and pray that a rule be issued directed to respondent and to William E. Rice, Recorder of Deeds for Warren County, to show cause why the record of said lease should not be expunged from the records of Warren County.

A rule was granted, served on respondent and the recorder, and answers to the petition were filed by them.

At the hearing on the petition, the record of the lease was put in evidence and by agreement of counsel a photocopy was substituted for the original record. Counsel for all parties agreed that no dispute of fact was raised by the pleadings and that the question raised is one of law, to wit: Is the lease in question a recordable instrument?

Oral argument was made to the court and briefs were filed by counsel for petitioners and counsel for the recorder of deeds. The arguments have been considered, the briefs carefully studied, an independent research of law has been made by the court and the matter will be here decided.

The undisputed facts are as follows:

1. On August 23, 1962, petitioners executed a lease for oil and gas purposes on approximately 107 acres of land owned by them in Sugargrove Township, Warren County, to Charles J. Siegel as lessee.

2. The lease was not signed by the lessee on one of

the lines printed for signatures of the parties, but he signed as a subscribing witness to the signatures of the lessors, opposite their signatures, under the heading "Sealed and Delivered in the Presence Of".

3. The sole acknowledgment of execution of the lease by the lessors is that of Charles J. Siegel, sworn to before a notary public of Erie, Erie County, Pa.

4. The acknowledgment reads as follows:

"Affidavit of Subscribing Witness

State of Pennsylvania )
County of Erie )

"On this the 6th day of Dec. 1962 before me, personally appeared the subscribing witness to the foregoing instrument, and known to me to be such subscribing witness, who, being by me duly sworn, does dispose and say that he Charles J. Siegel at the time of the execution of the foregoing instrument resided and still resides in the City of Erie, Pennsylvania; that he is and was acquainted with Arthur J. and Irene H. Engstrom and knew Arthur J. and Irene H. Engstrom, to be the individual described in and who executed the foregoing instrument and that he as subscribing witness was present and saw Arthur J. and Irene H. Engstrom execute the same and that the said witness, at the same time subscribed his name as witness thereto.

(s) Jean D. Baldwin

"Book 325 page 155 Notary Public (SEAL)"

5. The lease was recorded in the Recorder's Office of Warren County on December 6, 1962, and entered in Deed Book 325 at pages 154, 155.

### DISCUSSION

Counsel for petitioners argues that the lease is not a recordable instrument and should be expunged from the record on three grounds as follows:

"(a) The proof of the subscribing witness as to the

execution of said Lease was not made before an officer qualified to receive such proof.

"(b) The subscribing witness making such proof was the Lessee who is not a competent person to prove the execution of this document.

"(c) The Lease was incomplete in that it was not signed by the Lessee except as a subscribing witness."

In support of the ground averred in paragraph (a) above, counsel cites the case of Davey v. Ruffell, 162 Pa. 443, decided July 11, 1894, on appeal from a judgment obtained in Court of Common Pleas No. 4 of Philadelphia County. In affirming the trial court, the Supreme Court said:

"The important facts in this case are few. They have been relieved of all uncertainty by the agreement of the parties embodied in the case stated. The legal questions raised by them relate to the construction and effect of the Act of Assembly of May 19, 1893, P. L. 108."

The opinion then quotes the title to the Act of 1893, finds that it discloses a purpose to amend the Act of March 18, 1775, 1 Sm. L. 422, and holds that the six months' period for recording which was fixed by the Act of 1775 is reduced to 90 days by the Act of 1893. The court also holds that the Act of 1893 validly provides that if the holder of a deed fails to place it on record within 90 days after its execution, it should be held to be fraudulent and void as to subsequent purchasers and mortgagees whose instruments are recorded before his own, but the language which would make the unrecorded instrument void as to creditors of the grantor or bargainor is impossible to enforce and has no effect. Concerning this, the court said:

"The act is to be read as though the word 'creditors' was not in it, and in this respect the Act of 1775 is unchanged. The rule as it is understood under the old law is the rule under the Act of 1893, except as to the

length of time allowed for recording. . . . It results from this examination of the Act of 1893 that it is effective to change the law as it stood before, in only one particular, viz, it reduces the time within which a purchaser must record his deed from six months to ninety days. In all other respects the law remains as it was before. The learned judge of the court below reached a correct conclusion upon the facts submitted to him."

From the foregoing quotation, counsel has assumed the provisions of the Act of 1775 that deeds and conveyances shall be acknowledged by the grantor, or proved by one or more of the subscribing witnesses thereto before a judge, the recorder of deeds, prothonotary, or clerk of any court of record, justice of the peace, or *notary public of the county wherein said conveyed lands lie*, and shall be recorded, etc., is still in effect. As stated in Smith v. Young, 259 Pa. 367, the Act of 1775 was changed in one other respect and the court's statement in Davey v. Ruffell "was clearly an inadvertent statement". An examination of the lower court's decision in Davey v. Ruffell, reported in 3 Dist. R. 75, discloses the state of the law in regard to acknowledgments before notaries, prior to and after the Act of 1893. The court said, page 78:

"Notaries public were authorized to take acknowledgments of deeds for lands in any part of the state by the Act of Aug. 10, 1864, §2 P.L. 962. As I have before said, the Act of 1893 in no manner repeals this Act or any other of the Acts appointing officers to take acknowledgments. Nor is it inconsistent with or repugnant to them, nor exclusive of them, by any language contained in it."

The land conveyed in that case was located in the City of Philadelphia and the deed was acknowledged before a notary public residing in Delaware County. Objection was made on the ground that the notary did

not reside in the county where the land was located, as provided in the Act of 1775, but the court noted the change in the law as provided in the Act of 1864 above quoted, and held:

"We are therefore of the opinion that the acknowledgment of the deed offered to the defendant, was taken by a properly authorized officer, that is, by a notary public of this commonwealth, and that it is not necessary that he should have been a resident of the county in which the conveyed lands lie. . . . On the whole case, we are of the opinion that the Act of August 10, 1864, authorizing notaries public to take acknowledgments of deeds of lands lying in any part of the state, has not been repealed, but is still in force; . . ."

From the foregoing it is quite clear that counsel for petitioners has been misled by the language used in the Supreme Court's opinion in Davey v. Ruffell, and by failure to read the lower court's opinion which was affirmed.

As shown in 57 PS §164, the Act of 1864 was repealed by the Notary Public Law of 1949, which was, in turn, repealed by the Act of August 21, 1953, P. L. 1323, which provides:

"Notaries shall have power to take depositions and affidavits, to take and receive the acknowledgment or proof of all deeds, conveyances, mortgages, or other instruments or writing touching or concerning any lands, tenements or hereditaments, situate, lying and being in any part of this State": Act of August 21, 1953, P. L. 1323, sec. 18.

In support of ground (b), counsel for petitioners cites the case of Gibson v. Penn, 24 Pa. C. C. 244, a case decided by the Common Pleas Court of Washington County on October 5, 1900, for the proposition that the lessee, being a party to the lease, cannot be a subscribing witness as contemplated by the Act of 1775 and, therefore, the lease was unrecordable. If the rule stated

in Gibson v. Penn, supra, applies to the instant case, the lease should be expunged from the record.

Counsel has cited no appellate court decision in which the court has applied the rule of Gibson v. Penn. A search of Shepard's Pennsylvania Citations discloses that Gibson v. Penn has never been cited in any recorded case in Pennsylvania since it was decided 65 years ago. Considering the great number of recorded oil and gas leases in the Commonwealth, it is surprising not to find any citation of the case. The peculiar facts of Gibson v. Penn no doubt explain this. The instrument refused by the recorder, whose refusal was upheld by the court, was an option to purchase coal, given by the seven heirs of John Sleeth to S. A. Gibson and John E. Stewart, dated September 10, 1900, about three weeks before it was presented for record. The option is signed and sealed by all nine parties thereto. The consideration recited is $1. On the back of the option is an assignment by John E. Stewart to S. A. Gibson of all his interests therein. The court said:

"There is no dispute as to the identity of John E. Stewart. It is admitted that he signed the paper twice, once under the printed words 'in presence of' and once as a party."

On September 15, 1900, John E. Stewart made an affidavit that he saw the grantors, the Sleeth heirs, sign, seal and deliver the option, said affidavit being written on the back thereof. Under the terms of the option, notice of acceptance thereof was to be given to the heirs of John Sleeth on or before September 12, 1900. When the option was presented for record there was attached to it a paper dated September 12, 1900, notifying the heirs of John Sleeth that S. A. Gibson agreed to purchase the coal as per the terms of the option.

The court's opinion sets forth two grounds for upholding the recorder in his refusal to record the option

and the attached paper. Concerning the second ground, the court said:

"There is another reason why the recorder should not have recorded the paper presented to him for record, so as to make the record of it evidence against the heirs of John Sleeth, deceased. The paper they executed was an 'option given for and in consideration of the sum of $1.' On its face it was not evidence of either a legal or equitable title in 'lands, tenements and hereditaments.' Its record on September 26, 1900, when presented to the recorder, would be no notice to the public that S. A. Gibson and John E. Stewart had any title whatever in the coal described in said paper. A paper dated September 12, 1900 (the day the option expired), is, therefore, attached to and made part of said agreement, in which the heirs of John Sleeth, deceased, are notified that S. A. Gibson thereby agrees to purchase their coal as per terms of option made by them and John E. Stewart and himself, dated July 12, 1900, with the evident purpose of having it recorded as part of a paper which, taken as a whole, would evidence an agreement to sell the coal in question and convey an equitable title therein to S. A. Gibson. The notice as contained in this attached paper is not accepted by the heirs of John Sleeth, deceased, nor is there anything to show that they ever saw it or heard of it. Can it be claimed that this paper, signed by S. A. Gibson, is of any account unless the notice therein contained was, in the language of the option, given to the heirs of John Sleeth on or before Sept. 12, 1900? Why, then should it be attached to and made part of their agreement (which was but an option) and then the whole recorded as an option that had ripened into a contract of sale?

"We are clearly of the opinion that the recorder was right in refusing to record the paper offered for record. . . ."

From the foregoing it is readily apparent that the facts in Gibson v. Penn are vastly different from the facts in the instant case. Without some showing that the Sleeth heirs received notice that S. A. Gibson had taken up the option according to its terms, the court felt that it would work a fraud on the Sleeth heirs to allow the two papers to be recorded as a contract for sale of the coal. This court agrees with the Court of Common Pleas of Washington County on this point. However, if the additional paper had been signed by the heirs of John Sleeth so as to show notice to them of acceptance of the option according to its terms, the situation would be quite different. In the instant case, there is nothing to indicate fraud on the lessors. They admit having executed the lease, and it was recorded for what it was, a lease signed by them. Therefore, this portion of Gibson v. Penn cannot apply to the instant case.

The first ground stated in Gibson v. Penn for the court's holding that the option and the paper attached to it were properly refused by the recorder, contains the statements relied on by the petitioning lessors in the instant case. It is noted that under the provisions of the Act of 1715, a justice of the peace could take the acknowledgment of the grantor or bargainor in an agreement to sell real estate, or probate of the writing could be made before him by two subscribing witnesses if the grantor was dead or could not appear; that the Act of 1775 gave to the judges of the court of common pleas the power to probate a deed for record by the examination of one subscribing witness, and this was not conditioned upon the grantor being dead or unable to appear, as in the Act of 1715; that the Act of September 30, 1791, 1 Purdon Digest 636, pl. 39, gave justices of the peace the same power to make probate of deeds and records as the judges had under the Act of 1775; and that, therefore, the justice of the peace before

whom John E. Stewart made an affidavit that he saw the grantors sign, seal and deliver the option, was a sufficient acknowledgment for recording if Stewart was " 'a subscribing witness' in the sense in which those words were used by the legislature when it enacted the Act of March 18, 1775."

The court then states that under the common law a subscribing or attesting witness to a deed was an outside party called in to stand as a witness between the parties thereto, like an arbitrator, "The grantor says to the grantee, if there is ever any dispute about the execution and delivery, or identity of this deed, we will leave it to the person whose name appears here as an attesting witness." This may be good common law, although no authority is cited other than 1 Bouvier Dictionary 206, but the court also notes that the Act of 1887 makes a party to an instrument a competent witness to prove the same in a court of law. The opinion then states:

"There is clearly a distinction between the common-law proof of a deed in a trial and the statutory proof of a deed for record under the Act of 1775. This distinction is recognized in Vickroy v. McKnight, 4 Bin. 204."

The case cited contains an interesting history as to the requirements for proof of deeds under the common law, under the Act of 1715 and under the Act of 1775, noting that prior to 1715, conveyances could only be proved by the oath of a subscribing witness viva voce in open court and that this was found inconvenient in practice so that in 1715 recording offices were established in each county of the State in which deeds could be recorded when proved by the grantors or bargainors, or else two or more of the witnesses. The Act of 1775 changed this provision so that a conveyance could be acknowledged for recording by one of the grantors or bargainors or proved by

one or more of the subscribing witnesses. The deed involved in Vickroy v. McKnight was subscribed by two witnesses but only one of them made proof before a judge that he saw the grantor sign. The court held that inasmuch as the deed was governed by the Act of 1715, the statutory requirements of two subscribing witnesses had not been complied with and, therefore, the deed was not properly recorded and could not be admitted in evidence. Vickroy v. McKnight does not hold that a party cannot be a subscribing witness but only that the Act of 1715 requires the oaths of at least two of the subscribing witnesses, whereas the Act of 1775 provides that proof by one of the subscribing witnesses shall be sufficient.

When the identity of the instrument is challenged or the grantors deny having signed the instrument which was recorded by the recorder, the situation is certainly different than it is in the instant case. Here, the lessors admit that they executed the lease which was recorded with the acknowledgment of the lessee as a subscribing witness. In the court's opinion there is no ground for disqualifying the grantee as a subscribing witness under such circumstances. His acknowledgment swears to an admitted fact, i.e., that the lessors executed the lease. In the court's opinion the lessors have no standing to object to the grantee as a subscribing witness when he swears to a true and admitted fact. They cannot be allowed to avoid the consequences of their act in this fashion. Therefore, the court must find that the acknowledgment by the grantee is valid and the lease was properly accepted by the recorder and placed on record in Warren County.

In support of the ground averred in paragraph (c) that the lease was incomplete and unrecordable because it was not signed by lessee except as a subscribing witness, counsel has cited no authority whatsoever. In fact, this ground was abandoned and not mentioned

in a memorandum of law submitted to the court. This is understandable as there is no merit to such a claim. Even under the Act of 1715 it was the execution by the grantor or bargainor which was proved by them or by two or more witnesses. The Act of 1775 provides that conveyances of, or concerning, any lands, tenements or hereditaments in this Commonwealth "shall be acknowledged by one of the grantors or bargainors, or proved by one or more of the subscribing witnesses to such deed". No authority can be found for the proposition that a lease must be signed by the lessee to be recorded.

For the reasons above stated, the petition to have the lease in question expunged from the records must be dismissed and the court makes the following order:

### ORDER

And now, March 25, 1965, for the reasons stated in the foregoing opinion, it is hereby ordered that the petition of Arthur J. Engstrom and Irene H. Engstrom seeking to have the lease executed by them on August 23, 1962, to Charles J. Siegel expunged from the record, is hereby denied and dismissed and the rule granted thereon is discharged.

The costs of this proceeding are to be paid by petitioners.