Faust et al. *v.* Heckler, Appellant.

Argued March 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

20

*Charles F. Uhl,* with him *Uhl, Ealy & Uhl,* for appellant.

*Frank R. Coder,* for appellees.

Opinion by Mr. Justice Horace Stern, April 12, 1948:

As the court below properly held, plaintiffs are entitled to an accounting by defendant of the profits of the stripping operations conducted on the coal land owned by the parties as tenants in common.

In 1923 there was conveyed to B. F. Heckler and L. L. Faust, trading under the firm name of Heckler & Faust Coal Company, a certain seam of coal underlying a tract of 192 acres of land in Somerset County. The partnership carried on deep mining operations on this land for a period of ten years. In 1933 Heckler entered into an agreement to sell his half interest in the partnership and in the coal land to Kenneth L. Faust and Emery Earl Faust, sons of L. L. Faust, for $1500; thereafter the sons and their father operated the mine until February 12, 1935, when L. L. Faust died. The sons being unable to pay the $1500, and no deed for Heckler's half interest having ever been executed and delivered to them, the agreement between them and Heckler was cancelled by mutual consent. Heckler then operated the mine until September 6, 1935, by which time the deep mine coal had been exhausted. He wound up the affairs of the partnership which had been dissolved by the death of

L. L. Faust, bought the mine equipment for $2000 and moved it away, and properly accounted for the proceeds of the partnership, receiving from Kenneth L. Faust, as executor 'of the estate of L. L. Faust, a release of all claims arising out of the conduct of the partnership but not affecting in any way the ownership of the real estate.

The land lay idle, as far as mining operations were concerned, until 1943. Meanwhile the unmined. coal, about 6 acres in extent, which had been regularly assessed in the name of Heckler & Faust Coal Company, was assessed from 1936 to 1944 in Heckler's individual name, notwithstanding a request on his part to the County Commissioners in 1936 or 1937 to restore. the original names as owners. The assessment amounted to but a few cents annually, but Heckler, who received the bills for the tax, deliberately avoided their payment for the years 1937 and 1938, the result being that, in 1940, there was a public sale by the County Treasurer. Heckler himself became the purchaser for the sum 'of $8 and received the treasurer's deed in 1942 after the expiration of the two year redemption period.

In 1943 Heckler acquired from the owners of the land the right to remove the surface in order to carry on a coal stripping operation. He entered into an agreement with the Conbro Coal Company for the latter to mine the coal by that process, and subsequently he formed a partnership with his wife, his son and his daughter, to which he executed a bill of sale for the mining equipment and a deed for the coal; from then on until the coal was finally exhausted this partnership, through the Conbro Coal Company, carried on the stripping operations. In 1945 the widow of L. L. Faust, together with his two sons and other children who were the beneficiaries of his residuary estate, brought the present bill in equity against Heckler in which they prayed that he be adjudged to have acquired the tax title in trust for himself and plaintiffs, that they be adjudged to be the owners of an undivided one-half in-

terest, and that defendant be ordered to account to them for their share of the profits derived from the stripping operations.

In his answer to the bill of complaint defendant averred that in 1925 L. L. Faust had executed a declaration of trust in favor of the Windber Fuel Company in which he stated that that company had paid his share of the purchase money for the coal land in 1923 and that he personally had no beneficial interest in the real and personal property then acquired. At the hearing of the cause defendant introduced in evidence this declaration of trust and contended that, since L. L. Faust held merely the bare legal title at the time of his death, his children acquired from him no right therein or title thereto, and, if defendant was obliged to account to any one, it would be, not to plaintiffs, but to the Windber Fuel Company. To meet this situation, however, plaintiffs presented a release dated November 22, 1935 [1] by the Windber Fuel Company, duly executed by Kenneth L. Faust as its president and attested by its secretary, with the corporate seal attached, wherein the Windber Fuel Company admitted that all the moneys it had advanced at the time of the original acquisition of the coal land had been fully paid to it by L. L. Faust, and therefore it released and quit-claimed to him, his heirs, executors, administrators and assigns, all its right, title and interest of, in and to the real and personal property described in the declaration of trust of 1925.[2]

---

[1] This release was not acknowledged before a Notary Public until the present proceedings were in contemplation, but a legal instrument requires no acknowledgment in order to make it valid as between the parties: *Maguire v. Preferred Realty Co.*, 257 Pa. 48, 101 A. 100.

[2] It appeared, by other documentary evidence, that the Windber Fuel Company received $1000 of the $2000 paid by Heckler for the mining equipment and executed, also on November 22, 1935, a bill of sale conveying to him its right, title and interest in and to such equipment at the same time that such personal property was conveyed to Heckler by Kenneth L. Faust as executor of the Estate of

Whatever equitable interest the Windber Fuel Company previously may have had in the coal land was thus surrendered to its trustee L. L. Faust and for his benefit, and the trust was thereby terminated since the trustee who already held the title to the trust property acquired thereby the entire beneficial interest: Restatement, Trusts, §343, comment b. It is not understood, therefore, how defendant can now claim that the Windber Fuel Company (which, incidentally, has been out of existence since 1935), and not the heirs of L. L. Faust, is the party to whom accounting on his part is due as the result of the stripping operations conducted since 1943. The Windber Fuel Company, which was controlled and principally owned by L. L. Faust and his family, has never made any claim with respect to the subject-matter of these proceedings.

Defendant resisted the admission into evidence of the release by the Windber Fuel Company of its beneficial interest because the fact that there was such a release was not averred in the bill of complaint, and he contends that the plaintiffs cannot, therefore, rely 'on the title which was so obtained. This argument overlooks the fact, however, that the release did not create a new source of title in L. L. Faust and through him in his testamentary beneficiaries; on the contrary, he had the same title, springing from the same source, as before; all that the release did was to free that title of the trust. It may be added that, even had it been necessary, the bill 'of complaint could, in any event, have been amended, nor is there any intimation on the part of defendant that, had he been sooner aware of the release, he could have offered any additional testimony to weaken or destroy its effect.

---

L. L. Faust. The Windber Fuel Company also joined with Kenneth L. Faust, executor, in a release to Heckler and to the L. L. Faust Estate, likewise dated November 22, 1935, of all claims arising out of the deep mine operations following the death of L. L. Faust.

After defendant had liquidated the partnership in 1935, all creditors having been paid and settlement having been made between the partners, the coal land, which during the partnership might have been regarded as converted into personal property, reverted to its natural character as real estate and was thereafter held by the erstwhile partners as tenants in common: *Foster's Appeal*, 74 Pa. 391; *Account of Charles H. Welles, Trustee; Haeberly's Appeal*, 191 Pa. 239, 43 A. 207; *Hall's Estate*, 266 Pa. 312, 316, 109 A. 697, 698. It is elementary, therefore, that defendant could not purchase the property at the treasurer's sale so as to acquire an adverse title depriving his cotenants of their interest; that purchase inured to the benefit of all the tenants in common: *Davis v. King*, 87 Pa. 261; *Tanney v. Tanney*, 159 Pa. 277, 28 A. 287; *Enyard v. Enyard*, 190 Pa. 114, 42 A. 526; *Perry v. Livingston*, 191 Pa. 349, 359, 43 A. 230, 235; *Stimson v. Stimson*, 346 Pa. 68, 71, 29 A. 2d 679, 681; *Richards v. Richards*, 31 Pa. Superior Ct. 509. Notwithstanding the treasurer's deed to Heckler the title remained just as it was before the sale in defendant and plaintiffs as co-tenants, and where one of such tenants in common mines the coal and takes the proceeds thereof he is liable to account to his co-tenants for their proper share: *Coleman's Appeal*, 62 Pa. 252; *Harrington Bros. v. Florence Oil Co.*, 178 Pa. 444, 35 A. 855; *McGowan v. Bailey, Wilson & Co.*, 179 Pa. 470, 36 A. 325.

The court was right in directing that defendant's wife, son and daughter should be joined as additional defendants unless he himself assumed the duty of making a complete accounting on his and their behalf.

Decree affirmed; costs to be paid by defendant.