**In re Raydell FISHER, Debtor in Possession,**

**Raydell Fisher and Edward Sparkman, Trustee, Appellants,**

v.

**Advanta Finance Corp., Appellee.**

**Civ.A. No. 03–CV–4666.**

United States District Court, E.D. Pennsylvania.

Jan. 20, 2005.

---

18. 11 U.S.C. § 304(c).

19. *See id.*

20. *See* Tr. at 34, 40.

David A. Scholl, Newtown Square, PA, for Plaintiff.

Edward Sparkman, Philadelphia, PA, United States Trustee.

Aliza R. Karetnick, Dana B. Klinges, Wolf Block Schorr and Solis–Cohen L.L.P., Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

PRATTER, District Judge.

I. PROCEDURAL HISTORY AND SUMMARY RULING

This case involves a debtor's and the bankruptcy trustee's (collectively, the "Plaintiffs" or "Appellants") attempt to avoid foreclosure on a parcel of real property, including a personal residence, pursuant to the protections provided by the United States Bankruptcy Code, specifically 11 U.S.C. §§ 544(a)(3) and (b)(1) (the "Code").

The case was originally filed in the Court of Common Pleas for Philadelphia County on November 16, 2000. The case was then removed to the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") on August 15, 2001, after the debtor, Raydell Fisher, filed the underlying Chapter 13 bankruptcy action (Adversary Proceeding: 01–00830). The other plaintiff in this action was William Miller, successor to Edward Sparkman, the Chapter 13 Trustee ("Trustee Miller") to whom Fisher's case was originally assigned.

Presently before the Court is an appeal of Bankruptcy Judge Kevin J. Carey's Order, entered July 14, 2003, that a mortgage held by Appellee Advanta Finance Corporation ("Advanta") against the property of Raydell Fisher cannot be avoided in bankruptcy. Advanta seeks to avoid the strong arm powers of the Trustee as provided in 11 U.S.C. § 544.

As discussed more fulsomely below, this appeal presents the Court with something of a contest between reality and rule. Neither can nor should be given short shrift. On the one hand, Ms. Fisher was provided with all relevant documentation to assist her in making an objective determination that the Mortgage she now hopes to avoid had a higher interest rate than her previous loan and that a very large balloon payment would be due at the end of the term of the loan. See Oral Arg. at 4–7. Furthermore, had Ms. Fisher read all of the documentation provided by Advanta and thereafter decided she was becoming immersed in a financially bad deal, she had the opportunity to cancel the transaction within three (3) days of the loan closing. Def. Ex. 2. Nonetheless, Ms. Fisher chose to enter into the Mortgage transaction at issue and did not rescind her acquiescence within the required and available applicable time period. These circumstances weigh heavily in favor of the result effectuated by Judge Carey's Order. Nevertheless, on the other hand, this Court cannot ignore the relevant provisions of Pennsylvania law that govern the application of the remedies provided by the Bankruptcy Code in this case. Therefore, for the reasons stated below, the ruling of the Bankruptcy Court is VACATED as to Count One of Appellants' Amended Complaint, the ruling of the Bankruptcy Court is AFFIRMED as to Counts Two and Three of the Amended Complaint, and this case is REMANDED to the Bankruptcy Court for further proceedings consistent with the factual findings, legal analysis, and holdings provided below.

II. FACTUAL BACKGROUND

The proceeding in the Bankruptcy Court arose out of a transaction that apparently was consummated on January 26, 1996, between Ms. Fisher and Advanta, wherein Fisher refinanced the mortgage on her personal residence at 1217 Kater Street, Philadelphia, Pennsylvania (the "Home") in return for entering into a subsequent

mortgage in favor of Advanta to secure the refinanced loan (hereafter, the "Mortgage"). At the time of the events giving rise to this case, Advanta was in the business of making mortgage loans. However, Advanta no longer engages in that business.

Fisher purchased the Home in 1983. To finance the purchase, Fisher obtained a loan from Transworld Mortgage ("Transworld") secured by a mortgage. Fisher's required monthly payment to Transworld was $810.72, including principal, interest, taxes and insurance. Def. Ex. 11. The interest rate was 13%. Ex. P–2. The monthly principal and interest payment on the previous mortgage was $525.46. *Id.* Desiring to refinance her mortgage, apparently in order to achieve a lower overall monthly payment, Fisher entered into the transaction with Advanta as a result of a mail advertisement that she claims promised to reduce both her monthly payments and the interest rate on her then-present mortgage.[1]

The loan officer who serviced the Advanta Mortgage was one Jason Levine. Mr. Levine could not be located and was not a witness in the underlying bankruptcy proceeding. Thus, Fisher's allegations at the bankruptcy hearing regarding Levine's alleged representations about certain Mortgage provisions went unrebutted. Fisher claims that she informed Levine of the reasons she wished to obtain the Mortgage, i.e., to reduce her monthly payments and to lower the interest rate. Furthermore, Fisher claims that she relied on Levine's oral representations that the

Mortgage would be consistent with Fisher's inquiry. Specifically, Advanta admits that Levine told Fisher that she could get a loan in the principal amount of $44,000 with an interest rate of 14.25%, that the term of the mortgage could be 15 years and her monthly mortgage payment would be approximately $560. *See* Memorandum of the Bankruptcy Court ("Findings of Fact"), July 10, 2003, at 3, ¶ 3 (hereafter, "Op. at ___"). Taxes and insurance were not included in the Mortgage payment to Advanta. Fisher took notes of her conversation with Levine. Op. at 3, ¶ 3. Despite the fact that Fisher acknowledged that the terms of the Mortgage were not as beneficial as her current mortgage, she did not attempt to find more favorable terms from another mortgage company. Op. at 4, ¶ 5. Fisher claims that the reason she chose Advanta, despite the higher interest rate, was because Levine "promised" her that she could achieve better terms by refinancing again in six months and that Advanta would be amenable to such refinancing.

Settlement of the Mortgage transaction occurred in Philadelphia, Pennsylvania at Greater Philadelphia Health Action, Inc. ("GPHA"), Fisher's then-place of employment, on January 26, 1996. Fisher alleges that she was rushed through the process of signing all the paperwork and she was not given the opportunity to read all of the loan terms and documents before she executed the documents memorializing the Mortgage. Nevertheless, Fisher admitted that she never reviewed any of the documents before the closing; nor did she review them after entering into the Mortgage.[2] Hg. Tr. at 44. Instead, Fisher

---

1. The mail solicitation was not part of the record.

2. Pennsylvania law is very clear that "[i]t is the responsibility of the executing party to understand the significance of the documents he or she is signing. [The] law affords no leniency for individuals who do not read the contracts that they execute. According to the Pennsylvania Supreme Court, in the absence of proof of fraud, failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." *In re Jones,* 284 B.R. 92, 95–96 (Bankr.E.D.Pa.

claims that she relied on Levine's representation that the terms she requested were included within the loan documents. *Id.* The only persons present at the settlement and closing were Fisher and Levine. Op. at 4, ¶ 10. The transaction took less than five minutes to complete. *Id.* Fisher admits that her signature is on each of the documents. James Paradiso, the party who acknowledged the Mortgage as a notary public, was not present at the settlement and closing. Op. at 7. At the time of the refinanced mortgage, Paradiso was employed as a manager for Advanta. *See* Hr. Tr. at 55–56. The copy of the Mortgage that Fisher was given only contained the signatures of Levine and Fisher, but not that of Paradiso. *See* Ex. P–7.

During the underlying bankruptcy proceeding, there was a dispute between the parties regarding whether Paradiso was in fact present at the settlement. The GPHA sign-in book does not contain an entry for Paradiso. Op. at 7. Thereafter, based on the evidence presented, the Bankruptcy Court found "that Paradiso did not notarize the [M]ortgage at closing in the presence of Fisher." *Id.*

It is clear on the face of the documents reviewed that, even though the Mortgage was executed on January 26, 1996, it was not recorded until May 3, 1996, over three months later. *See* Br. Of Appellee, at 17. At the time Paradiso affixed his notary seal upon the Mortgage, he was a notary in Montgomery County, not in Philadelphia County, where the mortgaged Home was situated.

After signing the Mortgage documents, Fisher claims that she assumed that the Mortgage would include payments for taxes and insurance on the Home, consistent with what she believed was provided for in her prior mortgages. Furthermore, Fisher claims that she was never informed of her obligation to pay a balloon payment of over $40,000 after 15 years of monthly payments. However, at the closing, Fisher executed the Real Estate Mortgage which incorporated by reference the Balloon Loan and Combined Note and Security Agreement (the "Balloon Note"). Fisher also signed a Federal Disclosure Statement, reflecting the terms of the refinancing transaction, a Settlement Statement, containing all the fees, charges and disbursements associated with the Mortgage and a Notice of Right to Cancel. Op. at 4, ¶ 9.

The Mortgage and the Balloon Note included the following provisions: principal in the amount of $45,110.26; a real estate mortgage granting Advanta a lien upon the Home; an interest rate of 14.25%; an annual percentage rate ("APR") of 15.15%; regular payments of $543.44 and a balloon payment of $40,840.44. Op. at 4, ¶¶ 6,7. Fisher also alleges that Levine told her she was entitled to a re-negotiation of the Mortgage terms after six (6) months, but, when Fisher timely inquired about a refinance, Levine refused to effectuate such a renegotiation. The Bankruptcy Court held, however, that Fisher failed to prove, by clear and convincing evidence pursuant to the standard for finding fraud or deception, that Levine had no intention of facilitating the refinancing in six months at the time he allegedly suggested the possibility to Fisher. Op. at 11.

In essence, Fisher now contends that no reasonable person would have entered into the Mortgage with Advanta without the promise of a refinancing, absent fraud in

2002), *aff'd,* 308 B.R. 223 (E.D.Pa.2003) (internal quotation marks omitted) *citing Nelson Medical Group v. Phoenix Health Corp.,* 2002 WL 1066959, *2 (Pa.Ct.Com.Pl.2002) *citing In*

*re Estate of Olson,* 447 Pa. 483, 291 A.2d 95, 97 (1972). *See also Germantown Savings Bank v. Talacki,* 441 Pa.Super. 513, 657 A.2d 1285, 1289 (1995).

inducement. The terms of the Mortgage, on its face, were clearly detrimental to Fisher's financial interests, as they provided for a higher interest rate than her previous loan and a very large balloon payment at the end of the loan.[3] However, there is no dispute that the actual monetary obligation under the Mortgage was lower than Fisher's previous aggregate financial obligation.[4]

The Findings of Fact issued by the Bankruptcy Court confirmed that the Mortgage contained an invalid or bogus acknowledgment, in violation of 21 P.S. § 444. See Op. at ¶¶ 10 and 11 ("Only the Debtor and Levine attended the closing and it took less than five minutes to complete. The mortgage, which includes a completed acknowledgment signed by Paradiso, was recorded on May 3, 1996.") (internal citations omitted). Nevertheless, despite the Bankruptcy Court's clear findings on this point, Fisher claims that the court ignored the dictates of Pennsylvania law and the Bankruptcy Code, specifically 11 U.S.C. §§ 544(a)(3) and (b)(1), to reject her attack on the efficacy of the Mortgage, instead relying on the legal theory that "a recorded mortgage containing an acknowledgment that is complete and proper on its face cannot be avoided unless there is

proof of fraud or forgery." *See In re Jones,* 284 B.R. 92, 95–96, *aff'd,* 308 B.R. 223. As discussed *infra,* the Bankruptcy Court did find proof of fraud or forgery with regard to the Mortgage when, in its findings of fact and memorandum, the court unequivocally found that Paradiso did not acknowledge the Mortgage at the closing in the presence of Fisher. Op. at 4, 7. In fact, pursuant to the testimony and exhibits presented to the court below, Paradiso's testimony regarding the acknowledgment was "not credible." *Id.*

During the hearing before the Bankruptcy Court, Appellants concede that they only articulated general claims that the acknowledgment and recordation were defective, without indicating the specific nature and basis of the defects. Therefore, the Bankruptcy Court refused to consider the now-specified additional claims that (1) the mortgage was not timely recorded and (2) the alleged notary was from Montgomery County, not Philadelphia County, where the property is located. Therefore, Appellants were restricted by the Bankruptcy Court to arguing that fraud occurred with regard to the Mortgage, a much higher standard than Appellants believe is required under the law.[5] Never-

---

3. At the time of the Mortgage, the market rate for such a loan was 6.55%. See http://www.freddiemac.com/pmms/pmms15.htm ("15–Year Fixed–Rate Mortgages Since 1991") (last visited, January 17, 2005). Advanta offered Fisher the Mortgage with a 14.25% interest rate and an effective APR of 15.15%. Thus, Advanta offered a refinanced mortgage that was 231% of the published "going rate".

4. Taxes and insurance were not required to be included in the monthly Mortgage payment, in contrast to the obligation to pay taxes and insurance pursuant to Ms. Fisher's previous mortgage. Thus, the only benefit this Court finds that the Mortgage provided was that Fisher was able to pay off $261.96 in other debts. See Plaintiffs' Ex. P–5.

5. This Court also notes that, in filing this appeal, counsel for Ms. Fisher improperly represented in his submission that the Bankruptcy Court found that (1) the Plaintiffs "had proven" that Fisher was promised a mortgage with a lower interest rate than her current mortgages, (2) the balloon payment had not been explained by Levine, and (3) Levine falsely promised Fisher that she could refinance the Mortgage. See Br. of Appellants, at 7. In fact, the Bankruptcy Court found, *inter alia,* that despite the fact that Fisher contacted Advanta to refinance her existing mortgages to obtain a lower interest rate and lower monthly payment, (a) Fisher took specific notes during her initial inquiry to Advanta that the interest rate on the Mortgage would be **higher** (14.25% instead of the then-effective 13%), the monthly payments of principal

theless, in vacating the Bankruptcy Court's ruling on Count One with regard to the bogus or invalid acknowledgment, this Court finds that not only did Plaintiffs make a sufficiently clear and convincing showing of fraud by Mr. Paradiso (and thus, by Advanta), but the Bankruptcy Court both (a) disregarded its own finding of *per se* fraud or forgery with regard to the acknowledgment and (b) relied on flawed and unsupportable legal reasoning that was adopted from previous case law within this district. Thus, the court below, inconsistent with the clear dictates of 21 P.S. § 444, *infra*, mistakenly followed the results of some of our sister courts regarding similar arguments, but in which those other courts did not include a finding of *per se* fraud when an acknowledgment was improperly submitted to the County Recorder of Deeds.[6]

Appellants also appeal the Bankruptcy Court's holding that Advanta did not violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 P.S. §§ 201–2(4)(v), (vii), (xv) and (xxi). The Bankruptcy Court ruled in Advanta's favor on the UTPCPL issue finding that Advanta had no duty to explain the terms of the transaction to Fisher. Op. at 13–14. Furthermore, the Bankruptcy Court also found that while the Mortgage "may not have benefitted" Fisher, Op. at 14, Plaintiffs' claim on this ground must fail because there was no "credible evidence that Advanta insisted

that the refinance was necessary." Op. at 15.

The Bankruptcy Court did not require Plaintiffs to prove fraud to sustain the UTPCPL claim. Instead, the court required Plaintiffs to show that Levine misrepresented the terms of the Mortgage and intended to deceive Fisher regarding its terms, including the alleged guarantee that the Mortgage could be refinanced six months hence because of the less than favorable terms. Despite the fact that Levine did not testify at the underlying bankruptcy hearing and, therefore, Advanta could not rebut Fisher's testimony about (a) the unexplained Mortgage terms (terms that certainly existed and were expressed within the documentation), (b) the forced fast pace at which the transaction was closed, and (c) the alleged refinancing guarantee, the Bankruptcy Court ruled in favor of Advanta, permitting the foreclosure on the Home.

Therefore, upon consideration of the Bankruptcy Court's factual findings and legal conclusions, for the reasons stated below, upon a review of the record, the Bankruptcy Code, the applicable Pennsylvania law, the persuasive judicial authority within the Third Circuit, and with deference to the applicable standard of review, this Court finds that the Bankruptcy Court failed to properly apply the law, misapplied the "clear and convincing" evidence standard with regard to its factual findings as applied to some of the Plaintiffs' claims and abused its discretion by ruling in favor

---

and interest would be **higher**, and **she believed** a refinance would be available in six months, (b) Fisher took a loan from Advanta pursuant to a document titled "Balloon Loan Combined Note and Security Agreement" (the "Balloon Note"), (c) the Bankruptcy Court did not find any promises made to Fisher and (d) only Fisher and Levine attended the closing for the Mortgage, which took less than five (5) minutes to complete. Thus, this Court concludes that Fisher's counsel stretches the

bounds of energetic advocacy, perhaps blurring the lines between what he wished the record to support and what it does support.

6. *See e.g., In re Jones*, 284 B.R. 92, 95–96, *aff'd*, 308 B.R. 223; *In re Bell*, 309 B.R. 139, 158–59, *on recons. in part*, 314 B.R. 54 (Bankr.E.D.Pa.2004); *In re Armstrong*, 288 B.R. 404, 429–30 (Bankr.E.D.Pa.2003).

of Advanta on the issue of whether the Mortgage could be avoided due to the existence of a bogus or invalid acknowledgment.

## III. DISCUSSION

### A. Standard of Review

 Upon appeal of a ruling from the bankruptcy court, this Court reviews the bankruptcy court's legal conclusions *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof. *See In re Engel,* 124 F.3d 567, 571 (3d Cir.1997).

 Pursuant to *Fed R. Bankr.P. 8013,* a bankruptcy court's findings of fact, whether based on testimonial or documentary evidence, may not be set aside by a reviewing court unless those findings are "clearly erroneous", and deference must be given to the bankruptcy court's determination of the credibility of witnesses. *See In re Trans World Airlines,* 322 F.3d 283, 287 (3d Cir.2003); *see also, Jones,* 308 B.R. at 228. Furthermore, a bankruptcy court's findings of fact must be upheld unless the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Thus, to deliver an equitable ruling on the issues presented, this Court must review the facts and record before it as compiled by the Bankruptcy Court in conjunction with (1) Pennsylvania statutory and case law and (2) controlling and precedential case law within the federal court system. This Court must give deference to the factual findings and holdings in the underlying decision and may only render a reversal on any of the factual findings if the Court finds "clear error". This Court may only disturb the decision of the Bankruptcy Court if the Court finds an abuse of discretion in applying the law to the facts.

### B. The Bankruptcy Code

 The property interests of a mortgagor and mortgagee are both created and defined by applicable state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 36 (3d Cir.1993). A bankruptcy court is obligated to "ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy ensued." *Id.* at 37. Therefore, this Court is obligated to follow Pennsylvania law in determining the parties' rights with regard to the underlying Mortgage transaction.

The Bankruptcy Code (the "Code"), 11 U.S.C. 544, provides:

(a) The trustee ... may avoid ... any obligation incurred by the debtor that is voidable by ... (3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of commencement of the case, whether or not such a purchaser exists.
(b)(1) ... the trustee may avoid any ... obligation incurred by the debtor that is voidable under the applicable law by a creditor holding an unsecured claim.

These provisions represent some of the "strong arm" powers of the bankruptcy trustee and allow a trustee to avoid any obligation of the debtor (here, Fisher) that a hypothetical bona fide purchaser of real property from the debtor or an unsecured creditor of the debtor could validly exercise under applicable state law. *See, e.g., In re Bridge,* 18 F.3d 195, 198–200 (3d Cir.1994); *In re Peebles,* 197 B.R. 799, 801–02 (Bankr.W.D.Pa.1996); *In re Rice,*

126 B.R. 189, 192, 193 (Bankr.E.D.Pa.1991) ("*Rice I*"). Thus, in this case, the Code allows Trustee Miller to avoid an obligation on the Home if Miller can show that the obligation would not have bound a bona fide purchaser at the time Fisher filed her claim for relief under Chapter 13. *See McLean v. City of Philadelphia Water Revenue Bureau,* 891 F.2d at 474, 476 (3d Cir.1989). Consistent with these provisions, Appellants (including Trustee Miller) argue that they should have prevailed in the underlying bankruptcy action, thus avoiding foreclosure on the Home, because they proved, by a preponderance of the evidence, that the Mortgage, purportedly secured pursuant to Advanta's version of events, was not validly acknowledged. Therefore, both the applicable Pennsylvania law and the Code would allow a bona fide purchaser of the Home or Fisher's unsecured creditor(s) to successfully challenge the Mortgage because of the invalid or bogus acknowledgment by Paradiso.

## C. Requiring the Acknowledgment of a Mortgage Under Pennsylvania Law

In support of the claim against Advanta, Appellants cite the plain wording (and meaning) of Pennsylvania statutory law. In 1715, the Pennsylvania legislature enacted the following:

> [n]o ... mortgage ... shall be good ... unless such ... be **acknowledged or proved** and recorded ... within six months after the date thereof, where such lands lie.

21 P.S. § 621 (2001) (emphasis added). Thereafter, in 1775, the legislature enacted 21 P.S. § 444 (2001):

> All deeds and conveyances ... **shall be acknowledged** by the grantor ... before [various officials] or **notary public** of the county wherein said conveyed lands lie, and shall be recorded in the office for the recording of deeds where such lands ... are lying and being, **within ninety days** after the execution of such deeds or conveyance, **and every such deed and conveyance** that shall after the passage of this act be made and executed in this commonwealth, and **which shall not be proved and recorded aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser** ... for valid consideration, or any creditor of the grantor or in said deed or conveyance.... (Emphasis added).

Consistent with the express language of these statutes, Appellants make a strong argument for the proposition that an unacknowledged conveyance (being invalid or bogus), including a mortgage, shall be deemed *per se* fraudulent and void against any subsequent bona fide purchaser for value or any creditor of the grantor. Consistent with this argument, Trustee Miller stepped into the shoes of a bona fide purchaser of the Home or of Fisher's unsecured creditor(s) upon Fisher's filing under Chapter 13 of the Code, thereby entitling the Trustee to avoid the Mortgage, if it was proven that the acknowledgment was invalid or bogus. *See* 11 U.S.C. 544, 21 P.S. §§ 444 and 621. In light of the laws' clear wording and the Bankruptcy Court's findings (1) that "Pennsylvania law requires that all deeds and conveyances made and executed within Pennsylvania be acknowledged, otherwise the deed or conveyance is adjudged fraudulent and void against any subsequent purchaser or mortgagee," Op. at 5, and (2) that Mr. Paradiso, as the notary, "did not notarize the mortgage at closing in the presence of [Fisher]," Op. at 7, it is puzzling that the court below nevertheless held that pursuant to its prior ruling in *Jones,* 284 B.R. at 96, "[u]nder Pennsylvania law, a recorded mortgage containing

an acknowledgment that is complete on its face cannot be avoided unless there is proof of fraud and forgery." Op. at 5–6. In this regard, the irony is inescapable that the Bankruptcy Court's ruling is consistent with *dicta* penned by Plaintiffs' counsel, when he was a bankruptcy judge, that "the dictates of Pennsylvania law on this crucial issue are somewhat equivocal and that neither party can take comfort in unbroken precedent which supports its position." *See In re Rice*, 126 B.R. 189, 195 (Bankr.E.D.Pa.1991) (*Rice I*). Unfortunately, since *Rice I*, the Pennsylvania courts have not further defined the issue to make it less equivocal.

### D. Security Interests

■■■ Security interests are perfected under Pennsylvania law when the mortgagee records the mortgage with the Recorder of Deeds in the county in which the real estate is located. 21 P.S. § 621. Mortgages are recorded to provide notice to the entire world of the person or entity who encumbers title to the property. *Salter v. Reed*, 15 Pa. 260, 263 (1850). Pursuant to 21 P.S. § 42, an acknowledgment is a prerequisite for recordation with the Recorder of Deeds. *Abraham v. Mihalich*, 479 A.2d 601, 603 (Pa.Super.Ct.1984). An acknowledgment is a formal declaration before an authorized public official, by the person who executed the instrument, that such instrument is her voluntary and willful act or deed. *Id.* However, a deed is valid, as between the actual parties, without the acknowledgment or recordation. *Id.* (citing *Faust v. Heckler*, 359 Pa. 19, 58 A.2d 147, 149 n. 1 (1948); *Maguire v. Preferred Realty Co.*, 257 Pa. 48, 101 A. 100, 101 (1917)).

In the instant matter, the precise question at issue is whether Trustee Miller can avoid the Mortgage pursuant to 11 U.S.C. § 544, not whether the Mortgage is valid.

This Court finds no evidence to contradict Advanta's contention that Fisher was provided with all of the appropriate documentation contemporaneously with the Mortgage closing and signed all the loan agreements with Advanta. Nevertheless, both Pennsylvania law, 21 P.S. §§ 444 and 621, and the Code provide explicit obligations and protections, respectively, when security agreements have not been properly acknowledged or recorded. Therefore, with regard to the facts and issues present before this Court, reliance on the holdings in *Faust* and *Maguire*, for the proposition of the underlying Mortgage transaction's validity, as between the parties, is misplaced for the very reason that the transaction's validity, as between Fisher and Advanta, is not the issue at hand.

### E. Uniform Acknowledgment Act

■■■ In Pennsylvania, acknowledgments are governed by the Uniform Acknowledgment Act, 21 P.S. § 291.1, *et seq.* (the "UAA"). Pursuant to the UAA, an acknowledgment is made before an authorized officer, who may be a notary public, who must certify the acknowledgment. *See* 21 P.S. § 291.2. A notary who takes the acknowledgment must know or have satisfactory evidence that the person making the acknowledgment is actually the person described in, and who executed, the instrument. 21 P.S. § 291.5. When a notary certifies a document, the notary attests that the document has been executed, that the notary was confronted by the signor, that the signor is the person whose name is subscribed, and that the notary is verifying the act of execution. *Messinger*, 281 B.R. 568, 573 (Bankr.M.D.Pa.2002) (citing *Cmwlth. v. Frey*, 258 Pa.Super. 288, 392 A.2d 798 (1978)). *Messinger* also held, pursuant to Pennsylvania law, *Abraham*, 479 A.2d at 601, that one of the most important functions of the notary is verify-

ing that the individual to be bound to the agreement has verified the document and such execution is the intentional voluntary act or deed of that party. 281 B.R. at 574. There are only limited circumstances where the notary would be authorized to certify the acknowledgment in absentia. *See* 21 P.S. § 291.7. Here, as in *Messinger,* there were no indications that such circumstances for action in absentia existed with regard to the Mortgage. *Id.* Furthermore, after reviewing the standard forms prescribed for notarization, *id.* (all of which, this Court is constrained to observe, include the language *"in witness whereof"*), and the requirement that the acknowledgment be made "before" an appropriate public official, 21 P.S. § 291.2, this Court finds that "the presence of the parties is required, with limited exception,[7] for a proper certificate of acknowledgment in Pennsylvania." *See Messinger,* 281 B.R. at 574.

■■■■■ Therefore, in the instant case, and consistent with the findings of the Bankruptcy Court and the UAA, the Court holds that, if contemporaneously with the execution of the underlying documents, the notary (1) was not confronted by the signor, (2) did not confirm that the signor is the person whose name is subscribed and (3) could not confirm that the debtor executed the documents willfully, the acknowledgment is not merely defective, but is invalid or bogus. The Court further holds that the UAA is violated and evidence of fraud or forgery exists if subsequent to the signor's signature, and outside the signor's presence, the documents are acknowledged and presented to the Recorder of Deeds.

## F. Analysis

■■■■ Appellants contend that Bankruptcy Court's ruling in favor of Advanta, based on the Bankruptcy Court's prior holdings in *Jones, supra,* which, in turn, based its reasoning on *In re Messinger,* 281 B.R. at 572–75, is in direct contradiction with the Code, Pennsylvania law and prior law within the Bankruptcy Court for the Eastern District of Pennsylvania. *See In re Rice,* 133 B.R. 722, 725–28 (Bankr.E.D.Pa.1991) (holding that a mortgage may be valid as between mortgagor/debtor and mortgagee; however, the mortgagor/debtor or bankruptcy trustee could nevertheless avoid the mortgage because of a defective acknowledgment) (*Rice II*). The underlying facts and issues present in the instant matter make it distinguishable from both *Jones,* and *Messinger.*[8] Significantly, in *In re Jones,* 308 B.R. 223, 225–26 (E.D.Pa.2003), the district court, in affirming the findings of the bankruptcy court, *In re Jones,* 284 B.R. 92 (Bankr.E.D.Pa.2002), found that the debtor there presented a "muddled" recollection of the events surrounding the documents being executed and the debtor failed to provide credible evidence "to meet his burden of proving that a notary was not present at the time the documents were signed." *Jones,* 308 B.R. at 228. The bankruptcy court had described the testimony regarding the recollection of the events surrounding the execution of the

7. Pursuant to the statute, outside the presence of the parties whose signatures are being acknowledged, acknowledgments may also be made by an "attorney in fact" on behalf of the principal and an "attorney at law." According to the record, no such attorney in fact or attorney at law was present at the Mortgage closing here. The problem is that neither was Mr. Paradiso, the notary.

8. Nevertheless, despite the factual differences, it is the underlying legal analysis (and subsequent adoption by other courts of that analysis) concerning the proper interpretation, application and interplay between the respective facts, Pennsylvania law and the Code that this Court calls into question.

loan documents to be "muddled", "faulty" and "unreliable." *Id.* In contrast, in the instant matter, having heard and observed Ms. Fisher, according to the record and factual findings, the Bankruptcy Court clearly found that no acknowledgment occurred at the closing. Op. at 4, 7.

Nevertheless, the Bankruptcy Court refused to allow Appellants to avoid the Mortgage because it held, *inter alia*, (1) that a defective acknowledgment (here, by notarization) does not make the Mortgage invalid and (2) Appellants did not sustain their burden of proving that Advanta misrepresented information or engaged in fraudulent or deceptive practices during the Mortgage transactions. *Op.* at 7, 11 and 17. Notwithstanding this Court's acknowledgment of the Bankruptcy Court's skills and experience, this Court cannot but conclude that these findings by the court below represent significant legal errors, inconsistent with the plain wording and meaning of Pennsylvania statutory law, and imposed an impermissible burden on Appellants. Upon a review of the record, including the testimony by Paradiso,[9] this Court finds that clear error occurred below because, based on the Bankruptcy Court's factual findings, no legal conclusion was issued, based on those findings, that the Mortgage acknowledgment was *per se* fraud or forgery, *see* 21 P.S. § 444, though such a finding was virtually technically inescapable. The wording of the law could not be any clearer or more instructive of the obligations of a court in review of the facts. 21 P.S. § 444 ("[E]very such deed and conveyance that shall after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded aforesaid, **shall be adjudged fraudulent and void** against any subsequent purchaser ... for valid consideration, or any creditor of the grantor or in said deed or conveyance") (emphasis added).

Furthermore, on its face, the Mortgage was fraudulent and void because its recordation violated the clear mandate of 21 P.S. § 444, that "[a]ll deeds and conveyances ... **shall be recorded** in the office for the recording of deeds where such lands ... are lying and being, **within ninety days** after the execution of such deeds or conveyance ..." (emphasis added). Advanta and Paradiso failed to record the Mortgage within 90 days of the Mortgage closing. The Mortgage transaction closed on January 26, 1996 and the Mortgage was not recorded until May 3, 1996. *See* Def. Ex–9. The Mortgage documentation and the applicable law was squarely before the Bankruptcy Court; therefore, the court below, with its expertise in these types of matters, should have found on the record that the time for recordation had lapsed. Failure to record the mortgage within the time period renders the mortgage void and allows such a mortgage to be avoided by the trustee in a bankruptcy action. *See* 11 U.S.C. § 544. Therefore, the fact that Paradiso was responsible for the invalid or bogus acknowledgment and his failure to perfect the mortgage within 90 days provides Trustee Miller with ample support to avoid the Mortgage.[10] Such a finding should have been provided by the court below.

---

9. See Bankruptcy Hearing Transcript of August 14, 2002, in the matter of *Fisher v. Advanta Finance Corp.*, at 54–80 and 87–90 (hereafter, "Tr.")

10. There is also no indication in the record whether there existed a legitimate excuse for why the mortgage may have been filed late.

However, counsel for Advanta did suggest at oral argument that, at the time of the Mortgage transaction, a lawsuit was filed regarding a backlog in mortgage filings that resulted in mortgages being recorded after the statutory 90 day period, though counsel did not go

This Court also finds a misapplication of the law by the Bankruptcy Court regarding following issues: (1) whether the failure of Paradiso to fulfill his duties as a notary rendered the Mortgage avoidable under Pennsylvania law and (2) whether the record, when viewed as a whole, smacks of deception, if not fraud, specifically noting Paradiso's own testimony that closings can take at least an hour when explaining terms, as compared to the lower court's finding that the Mortgage closing here took a mere five minutes.

 The burden of proof was properly on the Plaintiffs below to prove all of the elements of their claims that did not involve allegations of fraud by a preponderance of the evidence. *See* Op. at 5; *see also, Jones,* 284 B.R. at 97. Based on the record, the Bankruptcy Court failed to acknowledge the serious, unrebutted defects in the notarization and potential deceptive, questionable and shady practices of Advanta. *Id.* However, to succeed on their fraud claims, Plaintiffs were required to prove each element by clear and convincing evidence. *See In re Barker,* 251 B.R. 250, 258 (Bankr.E.D.Pa.2000). With regard to the claims of fraud, misrepresentation or deception, the Bankruptcy Court found that Plaintiffs failed to meet their burden, but the court failed to properly address the issue of whether the Mortgage should be deemed *per se* fraudulent because of the manner in which the acknowledgment was executed. In coming to its decision, with regard to the defective notarization, the Bankruptcy Court relied on *Jones, supra,*[11] to find that, under Pennsylvania law, "a recorded mortgage containing an acknowledgment that is complete and proper on its face cannot be avoided

unless there is proof of fraud and forgery." *Jones,* 284 B.R. at 96. The *Jones* court relied on reasoning supplied by *Messinger, supra,* that the defective acknowledgment did not affect the validity of the Mortgage because the acknowledgment is not part of the document. *See* 281 B.R. at 574. The debtors in *Messinger* alleged that the respective mortgages were not valid because the notary was not present when debtors signed the loan documents. As noted above, pursuant to Pennsylvania law, an acknowledgment is required for the recording and perfection of a mortgage lien. *Id.* at 573 (citing *Abraham v. Mihalich,* 330 Pa.Super. 378, 479 A.2d 601, 603 (1984)); 21 P.S. § 42. The purpose of the acknowledgment is to confirm the executing party's identity and the party's voluntary, willful intention to be bound by the terms of the agreement. *Id.* at 574. In consideration of these findings, *Messinger* concluded that, absent an allegation of fraud or forgery, a latent defect does not warrant "interference with the presumptive validity of acknowledged and recorded mortgages, facially complete and regular." *Id.* at 575. In support of its conclusion, the court noted that

[t]he official certificate of the notary, in regular form, is (in the absence of fraud or forgery) conclusive in favor of those who in good faith rely upon it. "Any other rule would work incalculable mischief. It would open wide the door to fraud and perjury, and make recorded acknowledgments a snare to a person dealing with land on the faith and credit of the public records." *Popovitch v. Kasperlik,* 70 F.Supp. 376, 384 (W.D.Pa. 1947). Allowing a challenge where there is an allegation of fraud or forgery

so far as to assert that the Mortgage was so impacted. *See* Oral Arg. at 31–32.

11. The Bankruptcy Judge below also drafted the underlying *Jones* decision, which was subsequently affirmed by the district court, 308 B.R. 223.

would restore the protections that may have been lost by an improper fulfillment of notarial duties. Where the grantors concede that they have signed the deed, and the deed had been delivered, "even a defective acknowledgment would not be a basis for invalidating the recordation." *Abraham v. Mihalich*, 479 A.2d at 603.

Upon consideration of the reasoning relied upon by the Bankruptcy Court, and its reliance on *Jones* and *Messinger*, this Court finds that a "defective acknowledgment" is legally and logically inconsistent with a failure to acknowledge or an invalid or bogus acknowledgment, which the court below clearly found in its Findings of Fact. Op. at 4, ¶ 10 ("Only [Fisher] and Levine attended the closing and it took less than five minutes to complete."). Furthermore, the court found "Paradiso did not notarize the mortgage at closing in the presence of [Fisher].... In addition, the guest book kept at [Fisher's] then place of employment ... [c]ontains an entry for Levine but not Paradiso." *Op.* at 7. The acknowledgment was not merely "defective", i.e. the notary failed to date the acknowledgment or the notary acknowledged the document(s) but was only authorized to do so in another county, but, here, there was no acknowledgment contemporaneous with the signing of the Mortgage documents. This is not merely defective or a latent defect, but an invalid or bogus acknowledgment.

### G. Misplaced Reliance on *Messinger*

After discussing the proper legal standards, both statutorily and pursuant to the common law, for determining whether a bankruptcy trustee could avoid a mortgage because of an improper acknowledgment, the *Messinger* court focused on whether the deed was valid and binding between the parties. *See Messinger*, 281 B.R. at

574. That court dismissed the allegation of an invalid acknowledgment by finding that the acknowledgment "does not relate to the validity of the deed in any way and only establishes recording eligibility." *Id.* (citing *Abraham*, 479 A.2d at 601). This observation is absolutely correct. However, it is the eligibility to record a document, notifying prospective lien holders of a security interest, and the failure to achieve recordation eligibility, not the validity of the underlying contract between the parties, that allows a bankruptcy trustee to avoid a mortgage under the Code. *See* 11 U.S.C. § 544.

*Messinger* simply is unconcerned with the fact that the notary clearly abrogated his duty to be "in witness whereof" and for the signor to be "before" the notary to verify both the identification of the signing party and its willingness to be bound, by calling this a "latent defect, not appearing on the face of the mortgage." *Id.* By defining such a failure by the notary as a "latent defect," *Messinger* (and the subsequent courts that have followed its reasoning) condoned fraud and/or forgery to be perpetrated against the Recorder of Deeds, in clear disregard for the requirements of a notary under the UAA and for proper recordation. This Court cannot ignore the clearly apparent failure in logic and reasoning; to do so would perpetuate permission for a loophole for potential fraud or forgery to remain open. Continuing to follow that interpretation of *Messinger* would cause an incalculable mischief on the rights and obligations of the parties to real property transactions.

Considering the reasoning above and the fact that "a recorded notary's certificate is 'prima facie evidence' of due execution of a mortgage, but it is not conclusive in the case of fraud or forgery," *Williamson v. Barrett*, 147 Pa.Super. 460, 24 A.2d 546, 548 (1942), this Court finds that the Bank-

ruptcy Court was wrong to rely on the reasoning of *Jones* and *Messinger*. The court below committed clear error by failing to find the fraud or forgery by Paradiso,[12] improperly applied the law, and mistakenly adopted legal reasoning that is inconsistent with the facts, Pennsylvania law (including the UAA) and the Code. Furthermore, Advanta's argument that the Recorder of Deeds has "no way of knowing of the error and therefore no reason to reject the document" actually highlights the problem this Court seeks to rectify and, thus, supports Appellants' argument that the invalid acknowledgment should be deemed *per se* fraudulent. If the criteria for an acknowledgment never actually occurred, but a notary's signature and seal being affixed to the document erroneously convince the Recorder of Deeds that a proper acknowledgment did occur and recordation is therefore "proper", the Recorder has been hoodwinked by the one proffering the documents as eligible for becoming a valid security interest. This is a fraud.

The *Messinger* court, without citing any legal support for its reasoning, also suggests that a challenge based on fraud or forgery "should relate to the underlying document or transaction, rather than the acknowledgment." Under such rationale, *Messinger* dismisses the holding of *In re Rice*, 133 B.R. 722, as distinguishable on its facts because the transacting parties in *Rice* were misled regarding the nature of the document they were signing, as the signed document gave a security interest in a piece of property that the debtors never agreed to encumber. *Messinger*, 281 B.R. at 575. However, as discussed *supra*, when a notary abrogates his duty and the Recorder of Deeds records the applicable documents because the documents appear, on their face, as if they have been legitimately acknowledged, the notary (and any party proffering such documents with constructive knowledge that the documents were not properly acknowledged to comply with 21 P.S. §§ 444 and 621) commits a fraud on the public. There is no support in the law suggesting that fraud on the public should be considered any differently than fraud on a party to the underlying contract.[13] Condoning any fraudulent behavior or clear indication of forgery is both inequitable and works an "incalculable mischief" on the system for confirming the validity of secured transactions. *See Messinger*, 281 B.R. at 574.

A notary has specific, enumerated obligations that must be complied with to notarize a document. If the notary, in performing those duties makes a mistake, a defect in the acknowledgment may result. However, if a notary is not even present to acknowledge the validity of the mortgagor's identity and voluntary acquiescence to be bound by the terms of the agreement, following the Bankruptcy Court's interpretation of *Messinger*, no acknowledgment has occurred. Therefore, since both 21 P.S. §§ 444 and 621 were violated, the mortgage should have been adjudged "fraudulent and void", and Trustee Miller should have been permitted to avoid the Mortgage under the Code. *See* 11 U.S.C. § 544. Moreover, in light of Paradiso's

---

12. The Bankruptcy Court issued an unequivocal factual finding that Paradiso did not acknowledge the Mortgage documents contemporaneously with the closing. Such a fact should have been considered in conjunction with the UAA and resulted in a finding that the Mortgage had not been eligible for recordation with the Recorder of Deeds.

13. Similar logic can be found within the securities law, as in a securities transaction, where one can induce fraud (a) between the parties who buy and sell stocks or bonds from each other or (b) by publicly disclosing (or by failing to do so) certain material information about the underlying investment(s), causing a "fraud on the market."

testimony and the findings of the Bankruptcy Court, for Paradiso to claim that he was present contemporaneously with the Mortgage closing to notarize the documents is clearly unsupported by the record, a record that contains Ms. Fisher's copy of the documentation received from Levine that does not include a notary's acknowledgment. Furthermore, in light of the record and the fact that Paradiso, at some later date, did in fact sign the Mortgage documents in the space reserved for a notary, when he, in fact did not acknowledge Fisher's identity at the time of the closing transaction, is fraud and forgery. Thus, someone may well argue that Paradiso likely perjured himself to the Bankruptcy Court. The Bankruptcy Court should not have validated the Mortgage with such glaring defects present in the record.[14]

Thus, because in the instant matter, the Bankruptcy Court found, by implication, evidence of fraud or forgery in the Mortgage documents, there was "an allegation of fraud or forgery warranting interference with the presumptive validity" of the acknowledged and recorded Mortgage, despite the fact that it appeared facially complete and regular. *See id.* at 575. Therefore, the Mortgage shall be avoided under the Trustee Miller's strong-arm powers pursuant to 11 U.S.C. § 544.

 Finally, since Paradiso was a managerial-level employee of Advanta, his fraud or forgery and the invalid acknowledgment should be imputed to Advanta. Equitably, Advanta should not be permitted to profit from Paradiso's misdeeds and his obvious lack of appreciation for the obligations he accepted when he applied for and accepted his notary's license.

### H. Misrepresentations by Levine

 The Appellants' Brief provides no legal support for the argument that Levine misrepresented the opportunity for Fisher to refinance six (6) months later. The Bankruptcy Court correctly noted that only "a statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." Op. at 11 (quoting *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.,* 2000 WL 230347 at *1 (E.D.Pa. Feb. 23, 2000)). The fact that a refinancing never occurred after the parties likely discussed another refinancing in July 1996 does not represent convincing evidence of a fraudulent misrepresentation of fact. *See* Op. at 11. Therefore, the Bankruptcy Court correctly held that Appellants could not prevail on this claim because they had not presented evidence to show that, at the time of the Mortgage, Levine had no intention at all to permit Fisher to pursue a more favorable refinancing. *Id.*

### I. Fisher's Post–Hearing Claims-(i) Challenging the Acknowledgment Based on Notary's County of Residence and (ii) Failure to Record a Mortgage Within 90 Days

### 1. Challenging the Acknowledgment Based on Notary's County of Residence

 Appellants first raised in their post-bankruptcy hearing submission the issue of whether the Mortgage could be avoided as a result of Advanta failing to acknowledge the Mortgage using a Philadelphia notary. A federal court is entitled to grant relief on a theory, supported by the evidence presented, which was not

---

14. The Court also observes that allowing the Bankruptcy Court's conclusion to stand would necessarily endorse a devaluing of the worth of a notarized signature, risking treatment of a time-tested practice as some sort of antiquated or quaint custom without significance or meaning. Notaries do not deserve to be assigned to such irrelevancy.

stated in the pleadings. *See* Fed.R.Civ.P. 15(b); *Douglas v. Owens*, 50 F.3d 1226, 1235 (3d Cir.1995). However, when relief is requested based on a theory that was not originally raised in the pleadings, Rule 15(b) requires that those issues that were not pleaded, but instead were tried with the express or implied consent of the parties, be treated as if they were actually raised in the pleadings. *Id.* at 1235–36.

■ No mention of the issue of defect based on the notary's county was raised during the bankruptcy hearing or in any submissions prior to that hearing. Therefore, the issue of the notary's county of residence was not tried by implied consent, that argument was properly dismissed by the Bankruptcy Court, and that issue is not properly before this Court. Nevertheless, even if the "wrong county" issue was properly before this Court, Pennsylvania law supports a ruling that such a mistake would be considered a latent defect and would not support a ruling in Appellants' favor. *See Angier v. Schieffelin*, 72 Pa. 106, 108–09 (1872); *cf. In re Jones*, 308 B.R. at 230–31 (citing *Engstrom v. Siegel*, 36 Pa. D. & C.2d 184 (1965); *Davey v. Ruffell*, 3 Pa. D. 75 (1893)) ("[T]he acknowledgment of the Delaware County mortgage by a notary public from Philadelphia County was in compliance with Pennsylvania law and there is no basis to avoid the mortgage on that ground.").

### 2. Failure to Record a Mortgage Within 90 Days

Pursuant to *Douglas, supra,* and Rule 15(b), however, the fact that Advanta and Paradiso failed to record the Mortgage within 90 days of the closing and an invalid acknowledgment was provided to the Recorder of Deeds is properly before this Court because the pre-hearing submissions, as well as the testimony at the bankruptcy hearing, called into question Para-

diso's actions, including allegations of fraud and forgery. Further discussion regarding this can be found *supra.*

### J. Unfair Trade Practices

■ Appellants also appeal the Bankruptcy Court ruling that Advanta was not in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201(4)(v), (vii), (xv) and (xxi). The UTPCPL protects consumers of goods and services from unfair or deceptive trade practices or acts. The purpose of the law is to "place on more equal terms [the] seller and consumer." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974).

Appellants' claim hinges on the portion of the UTPCPL that states it is an unfair trade practice for a lender to represent that services have benefits or qualities that they do not have. *See* 73 P.S. §§ 201(4)(v). Appellants argue that the Bankruptcy Court should have found a violation of the UTPCPL if it found that Levine represented to Fisher that the terms of the Mortgage were superior to her prior mortgage, regardless of whether Levine also explained the nature of some of the Mortgage's financial terms. Additionally, Appellants argue that if the Bankruptcy Court found that Levine knowingly misrepresented that certain services were needed by Fisher, even if they were not, 73 P.S. §§ 201(4)(xv), another violation of the UTPCPL should have been found. However, as Advanta correctly argues, the Bankruptcy Court found in Advanta's favor because Appellants failed to present evidence to the court below that Advanta misrepresented the facts by "insist[ing] that the refinance was necessary." Op. at 15.

Finally, the Bankruptcy Court rejected Appellants' claim under 73 P.S.

§ 201(4)(xxi), the catchall provision making it unlawful to engage in "other" fraudulent or deceptive conduct, because the court found that the Appellants did not meet their burden of proving that Advanta committed a misrepresentation by (1) failing to disclose that Fisher's payments under the Mortgage did not include an escrow or a balloon payment or (2) caused Fisher to think that the option to refinance after six months was guaranteed.

Pursuant to the findings of *In re Patterson*, 263 B.R. 82, 92 (Bankr.E.D.Pa.2001), the bankruptcy courts should view the UTPCPL as a remedial law designed to protect against deceptive conduct that does not rise to the level of fraud. *See Monumental*, 329 A.2d at 817. However, the Pennsylvania Superior Court has continued to hold that plaintiffs must prove the elements of common law fraud to prevail on a claim brought under the UTPCPL catchall provision, 73 P.S. § 201(4)(xxi). *See Skurnowicz v. Lucci*, 798 A.2d 788 (Pa.Super.Ct.2002) (holding that the five elements of common law fraud apply to 73 P.S. §§ 201(4)(xxi)), and *Booze v. Allstate Ins. Co.*, 750 A.2d 877 (Pa.Super.Ct.2000), *appeal denied*, 564 Pa. 722, 766 A.2d 1242 (2000). Nevertheless, the bankruptcy court in *Patterson*, 263 B.R. at 92, held that the word "deceptive" within the catchall provision necessitates a less restrictive standard than proof of fraud.

Therefore, to prevail under the UTPCPL deception standard, Fisher needed to establish that Levine made a false representation that deceived or had a tendency to deceive and that the representation was likely to affect Fisher's decision to enter into the mortgage. *See Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa.Super.Ct.1999). In applying this standard to the underlying action, the Bankruptcy Court properly ruled in favor of Advanta

because (1) Fisher admitted she knew the interest rate was higher than her existing mortgage and Advanta never represented that it would be lower, Hr. Tr. at 16–20, 35–36, and (2) both the Balloon Note and the Federal Disclosure Statement clearly laid out the terms of the mortgage loan, including the provision for a large balloon payment, Ex. D–5A and Ex. P–5. Advanta correctly argues that Fisher should have read the loan documentation, as it was her responsibility to understand the significance of the documents she signed. Absent proof of fraud or actual deception, failure to read is not a defense and will not justify the avoidance of a contract. *In re Estate of Olson*, 447 Pa. 483, 291 A.2d 95, 98 (1972); *see also, In re Rothman*, 204 B.R. 143, 156 (Bankr.E.D.Pa.1996).

Therefore, consistent with the law and the facts presented in the record, the Bankruptcy Court did not err in finding for Advanta that there was no violation of the UTPCPL catchall provision. Fisher clearly knew or should have known that the terms of the transaction were more formidable than the terms she was obligated to prior to the Mortgage. That Fisher failed to read her loan contracts and commitments is no excuse, and this Court will not disturb the Bankruptcy Court's holding regarding the UTPCPL.

## IV. CONCLUSION

While it is not within this (or any) Court's jurisdiction to prevent people from engaging in illogical behavior, such as Fisher accepting the Mortgage that was, on its face, clearly unfavorable to her, the Court is empowered to and will protect litigants (and the public) from fraud and/or forgery that is properly presented in court and as was clearly found by the Bankruptcy Court in this case.

The respective property interests of Ms. Fisher, Trustee Miller and Advanta were

created and defined by Pennsylvania law. *See Butner,* 440 U.S. at 55, 99 S.Ct. 914; *Commerce Bank,* 5 F.3d at 36. Thus, the Bankruptcy Court was obligated to ensure that the parties to the Mortgage transaction were afforded in federal bankruptcy court the same obligations, rights and protections as they would have had under state law if no bankruptcy ensued. *See id.* at 37.

A proper reading of Pennsylvania law and its interpretation pursuant to the Code supports the Plaintiffs' argument that Pennsylvania law expressly provides that an unacknowledged mortgage is *per se* fraudulent as to a bona fide purchaser of the property involved or as to an unsecured creditor of the obligor, making further proof of fraud unnecessary. Nevertheless, in the alternative, if a document required to be acknowledged is filed with the Recorder of Deeds after an invalid acknowledgment has been affixed, proof of fraud or forgery exists because the filer is representing that the 21 P.S. §§ 444 and 621 and UAA have been complied with, when in fact, they have not.

Pursuant to Advanta's argument, even if this Court, in its *de novo* review, should hold that Pennsylvania law requires proof of fraud or forgery to void the perfection of a recorded mortgage containing an acknowledgment that is complete and proper on its face, *see Messinger,* such proof exists when the factfinder determines that no acknowledgment occurred-it was either affixed in an invalid or bogus manner. The Recorder of Deeds was mislead into recording the Mortgage documentation by Paradiso's fraudulent actions, actions which in this instance Advanta had the power to prevent or rectify. Furthermore, pursuant to 21 P.S. § 444, the Mortgage was not eligible for recordation because it was submitted to the Recorder of Deeds more than 90 days following the Mortgage closing.

The Bankruptcy Court failed to properly apply the law, misapplied the "clear and convincing" evidence standard with regard to some the Plaintiffs' fraud claims and abused its discretion by ruling in favor of Advanta on those claims. Therefore, for the reasons stated above, and because this Court has the definite and firm conviction that mistakes were committed by the Bankruptcy Court in this instance, *see Anderson,* 470 U.S. at 573, 105 S.Ct. 1504, the Bankruptcy Court ruling shall be vacated with regard to its ruling on Count One, and this case is remanded to the Bankruptcy Court for adjudication consistent with the discussion contained herein. *See* Fed. R. Bankr.P. 8013; *In re Trans World Airlines,* 322 F.3d at 287; *see also, Jones,* 308 B.R. at 228. An appropriate order follows.

IT IS SO ORDERED.

### ORDER

AND NOW, this 20th day of January, 2005, following a review of the record in the underlying bankruptcy action and upon consideration of the Brief of Appellants (Docket No. 3), the Brief of Appellee (Docket No. 4), the Reply Brief of Appellants (Docket No. 5), and following oral argument held on November 29, 2004, it is hereby ORDERED:

1. The Bankruptcy Court's ruling with regard to Count One, regarding Appellants' ability to avoid the mortgage held by Advanta Finance Corporation, pursuant to the Court's interpretation of Pennsylvania law, and consistent with the Bankruptcy Code, is VACATED;

2. The Bankruptcy Court's rulings with regard to Counts Two and Three, regarding Appellants' claims of fraudulent misrepresentation and those brought pursuant to the Pennsylvania Unfair

Trade Practices and Consumer Protection Law are AFFIRMED; and

3. This matter is REMANDED to the Bankruptcy Court for further proceedings consistent with factual and legal conclusions contained in the corresponding Memorandum Opinion.

It is so ORDERED.