In re Susan HUFF, Debtor.

United States Department of
Agriculture, Rural Housing
Service, Appellant,

v.

Susan Huff, Appellee.

Civil Action No. 05–212.
Bankruptcy No. 03–10613–WWB.

United States District Court,
W.D. Pennsylvania.

March 29, 2006.

Paul E. Skirtich, Esq., Assistant United States Attorney, U.S. Attorney's Office, Pittsburgh, PA, for Appellant.

Lloyd Ellsworth Wilson, II, Esq., Franklin, PA, Richard W. Roeder, Esq., Richard W. Roeder & Associate, Titusville, PA, for Appellee.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

The United States Department of Agriculture, Rural Housing Service ("government") appeals from the United States Bankruptcy Court for the Western District of Pennsylvania's order determining that the government's setoff of Debtor Susan Huff's 2003 income tax refund was impermissible because the government failed to follow the proper notification requirements under 31 U.S.C. § 3720A. We have jurisdiction pursuant to 28 U.S.C. § 158(a) and conclude that the Bankruptcy Court had core jurisdiction to hear Huff's claim and enter a final judgment but that the Bankruptcy Court erroneously concluded that the government could not setoff Huff's income tax refund. Accordingly, and for the following, we reverse the judgment of the Bankruptcy Court.

### I. BACKGROUND

In 1991, Susan Huff obtained a loan from the Rural Housing Services (RHS), an agency of the United States Department of Agriculture, to purchase a residence. In 1999, she sold the residence but did not make enough to fully pay back the original loan. In order to recover on the debt, the RHS notified Huff, in October of

2000, that it intended to submit the debt to the Department of the Treasury's Treasury Offset Program (TOP) and, in December of 2000, it certified the debt to the TOP.[1] Pursuant to the TOP procedures, the RHS received, through setoff, Huff's income tax refunds for 2000, 2001, and 2002. These amounts were applied to her debt owed to the RHS.

In January 2004, Huff filed a petition under Chapter 7 of the Bankruptcy Code. Huff listed the RHS as a general unsecured non-priority creditor with a claim of $36,519. However, the RHS advised the Bankruptcy Court that the actual amount of the outstanding debt was $24,925.33. In April 2004, Huff sought to discharge the debt owed to the RHS and she also amended her petition to include an expected tax refund for 2003 of $2000. She asserted that this tax refund was exempt and no objection was timely filed to either the amended schedule or to Huffs claim that her 2003 income tax refund was exempt.

In July 2004, after Huff realized that the RHS had intercepted her 2003 income tax refund and applied it to her debt owed to the RHS, she filed a motion styled "Motion for a Rule to Show Cause" with the Bankruptcy Court claiming that the RHS had impermissibly intercepted her tax refund because it had not given proper notice under the notification requirements in 31 U.S.C. § 3720A. The RHS conceded that it had, through the TOP, intercepted Huff's 2003 income tax on May 26, 2004 but contended that the offset was permissible either because it was intercepted pursuant to the government's common law right to setoff, and therefore was not sub-

ject to any notification requirements under § 3720A or, if it was subject to the notification requirements, that it fully complied with them. Additionally, the government asserted that the Bankruptcy Court lacked core jurisdiction over Huff's claim and that sovereign immunity had not been waived for an order compelling the RHS to pay funds to Huff.

After concluding that it had core jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(O), the Bankruptcy Court ruled, in favor of Huff, that the offset was impermissible because the RHS had failed to comply with the notification requirements under § 3720A. The Bankruptcy Court therefore ordered the RHS to return Huff's 2003 federal income tax refund. The RHS timely appeals the Bankruptcy Court's order.

Sitting as an appellate court pursuant to 28 U.S.C. § 158(a), we review the Bankruptcy Court's conclusions of law *de novo* and its factual findings for clear error. *In re Fisher*, 320 B.R. 52, 61 (E.D.Pa.2005).

## II. JURISDICTION

We first address the government's claim that the Bankruptcy Court lacked jurisdiction over Huff's motion. The government first asserts that "[w]hen a claim held by a Chapter 7 debtor is not property of the estate, the bankruptcy court has no source of jurisdiction to adjudicate the claim" because it does not fall within the "related to" jurisdiction grant of 28 U.S.C. § 1334. We disagree. § 1334 grants broad jurisdiction to bankruptcy courts (upon referral from district courts)

---

1. The TOP is a centralized program administered by the Department of Treasury (DOT) and is now operated by the Financial Management Service (FMS). Additionally, the program traditionally covered only the application of administrative offsets, leaving the

Internal Revenue Service to operate offset by tax refund. These two programs have now merged and the TOP now encompasses both centralized administrative offsets and tax refund offsets. *See* 62 Fed.Reg. 34175.

for all cases filed pursuant to title 11, including any claim concerning "all the property, wherever located, of the debtor ... and of the property of the estate." § 1334(e)(1). Accordingly, § 1334 grants jurisdiction not only to claims affecting the debtor's estate, but also to any dispute that might conceivably affect the debtor's property. *See Abramowitz v. Palmer,* 999 F.2d 1274, 1277 (8th Cir.1993) ("[T]he bankruptcy court's jurisdiction includes all property of the debtor and of the bankruptcy estate."); *see also In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990) ("[T]he proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, option, or freedom of action in any way....."). Because exempt property remains property of the debtor, *see Abramowitz,* 999 F.2d at 1277, Huff's claim concerning the permissibility of the government's offset of her exempt property directly concerns her property and falls within § 1334's "related to" jurisdiction.

▌ The government also argues that, even if the dispute falls within the "related to" jurisdiction of § 1334, it is not a "core" proceeding under 28 U.S.C. § 157 and therefore the Bankruptcy Court was deprived from entering a final order and judgment. This argument likewise fails. In *Halper v. Halper,* 164 F.3d 830 (3d Cir.1999), the Court of Appeals for the Third Circuit stated that:

> [t]o determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." Second, the court must apply this court's test for a "core" proceeding. Under that test, a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a

proceeding, that by its nature, could arise only in the context of a bankruptcy case.

*Halper,* 164 F.3d at 836 (quoting *In re Guild & Gallery Plus, Inc.,* 72 F.3d 1171, 1178 (3d Cir.1996)) (internal quotations omitted). Thus, to determine whether Huff's claim that the government impermissibly offset her exempt tax refund is a "core" proceeding, we must apply *Halper's* two-part inquiry.

▌ Consulting the first source, 28 U.S.C. § 157(b)(2)(O) confers jurisdiction over Huff's claim. This provision, commonly referred to as the "catch-all" provision, *see In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986), establishes core jurisdiction over "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." § 157(b)(2)(O). For our purposes, we conclude that a dispute over the exempt property of a debtor "affects the adjustment of the debtor-creditor ... relationship" and accordingly, falls within the ambit of § 157(b)(2)(O). *Id.* The plain meaning of the language in § 157(b)(2)(O) confers "core" jurisdiction over any matter that affects the debtor-creditor relationship and a determination concerning the permissibility of a creditor's offset of a debtor's property falls within that plain meaning. *See In re Gordon Sel–Way, Inc.,* 270 F.3d 280, 287–88 (6th Cir.2001) ("[T]he adjudication of Sel–Way's tax refund claim and the government's right to setoff will determine Sel–Way and the government's rights vis-a-vis one another. Thus it is clear that the bankruptcy court did have core subject matter jurisdiction [under § 157(b)(2)(O) ] to hear this case."); *Pieri v. Lysenko (In re Pieri),* 86 B.R. 208, 212 (9th Cir. BAP1988) (assuming bankruptcy jurisdic-

tion over a dispute concerning the permissibility of an offset of a debtor's exempt tax refund); *see also In re Tarbuck,* 318 B.R. 78 (Bankr.W.D.Pa.2004); *In re Jones,* 230 B.R. 875, 878 (M.D.Ala.1999).

 Additionally, while it is clear that Huff's claim concerning her tax refund is not exclusive to her bankruptcy case and therefore could arise in other contexts, it does invoke a substantive right under title 11 and consequently meets the second step in the *Halper* test. *Halper,* 164 F.3d at 836. Under 11 U.S.C. § 553(a),[2] a creditor's right to offset a mutual debt owed to the debtor that arose pre-petition is not impaired by the bankruptcy proceeding itself. *See* § 553(a).[3] In order for a creditor to invoke § 553(a), the creditor must satisfy the substantive components of that provision, including the requirement that the claimed pre-petition, non-bankruptcy right to offset be valid. *See In re Jones,* 230 B.R. at 878 ("The Government invokes § 6402(a) of the Internal Revenue Code as the basis of the IRS's non-bankruptcy right of setoff which is preserved by § 553(a)."). Put another way, under the requirements of § 553(a), a debtor maintains the right to contest the application of § 553(a) by contesting the validity of the claimed non-bankruptcy right to setoff. Here, Huff's claim is that the government's non-bankruptcy right to setoff is invalid because they failed to comply with the notification requirements pursuant to 31 U.S.C. 3720A and therefore, any attempt, under § 553(a) to setoff her 2003 tax refund must fail. Because this claim invokes a substantive right, under title 11, specifically, the validity of § 553(a), Huff's claim meets the second step of the *Halper* test.

### III.

We turn next to the Bankruptcy Court's determination that the government failed to comply with the notification requirements of 31 U.S.C. § 3720A and therefore impermissibly offset Huff's 2003 tax refund.

### A.

 Congress enacted the tax intercept program as part of the Deficit Reduction Act of 1984 as an attempt to codify certain procedures a federal agency must follow upon intending to recover an overdue debt by intercepting the debtor's federal income tax refund. *See In re Chateaugay Corp.,* 94 F.3d 772, 778 (2d Cir. 1996). Two separate provisions, 26 U.S.C. § 6402(d)[4] and 31 U.S.C. § 3720A,[5] give initial content and structure to the program, now known as Treasury Offset Pro-

---

2. § 553(a) states:

 Except as otherwise provided in this section ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such a creditor against the debtor that arose before the commencement of the case....

3. We note in contrast, however, that 11 U.S.C. § 522(c) prevents any exempted property from being applied to any debt that arose before the commencement of the bankruptcy case. *See* § 522(c). There is, then, an obvious conflict with respect to the permissibility of setoff of exempt property, under title 11, that arises within the bankruptcy context and

these two competing provisions have yet to be fully harmonized. *See In re Pieri,* 86 B.R. at 212 ("This analysis presents an appellate nightmare, for these provisions appear to be in direct conflict in regard to resolving the precise question presented here."). We do not, today, wade into this controversial morass.

4. 26 U.S.C. § 6402(d)(1) provides:

 Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt ... to such agency, the Secretary [of the Treasury] shall—(A) reduce the amount of any overpayment payable to such person by the amount of such debt; (B) pay the amount

gram (TOP). Under these two provisions and their corresponding regulations, the Secretary of the Treasury may setoff a tax refund against the taxpayer's debt to another Federal agency. *In re Chateaugay Corp.*, 94 F.3d at 778. The statutes require the Secretary to promulgate regulations prescribing the contours of the program. *See* 26 C.F.R. § 301.6402–6; 31 C.F.R. § 285.2, § 285.5. Under § 301.6402.6, a Federal agency may not participate in the tax refund offset program unless it has itself promulgated regulations under § 3720A. § 301.6402.6. Thus, for instance, if the Department of Education wanted to pursue recovery of a debt through the TOP, it not only would have to comply with statutory requirements and the DOT's regulations, but it must also have promulgated its own regulations regarding its participation in the TOP. *See* 34 C.F.R. § 30.22. There is, then, somewhat of a statutory melange governing the responsibilities and requirements of both the creditor agency and the DOT.

## B.

■ Generally, the statutory provisions and regulations require that, before entering the TOP program, an agency must notify the debtor of the agency's intent to use the offset procedure and to give the debtor "at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable." § 3720(b). Additionally, the provisions require the agency to "notify the Secretary of the Treasury at least once a year of the amount of such debt." § 3720(a).

Huff argues, and the Bankruptcy Court agreed, that the statute and regulatory scheme requires that the creditor agency give the debtor at least 60 days notice once a year, for every year it intends to intercept a tax refund. Specifically, the Bankruptcy Court concluded that in enacting § 3720A, Congress "meant for a[debtor] to receive notice of a proposed tax offset each year and that such a person would have 60 days each year to contest the setoff *prior* to a Federal agency making its annual notification to the Secretary of Treasury." Bankr.Op. at 6 (emphasis added).

The government contests this interpretation, arguing that "[n]either the statute nor the accompanying regulations requires the referring agency to certify that the

by which such overpayment is reduced ... to such agency; and (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

5. 31 U.S.C. § 3720A requires that:
 (a) Any federal agency that is owed a past-due legally enforceable debt ... by a named person shall, in accordance with regulations issued pursuant to subsections (b) and (d), notify the Secretary of the Treasury at least once a year of the amount of all debt.
 (b) No Federal agency may take action pursuant to subsection (a) with respect to any debt until such agency—
 (1) notifies the person incurring such debt that such agency proposes to take action pursuant to such paragraph with respect to such debt;
 (2) gives such person at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable;
 (3) considers any evidence presented by such person and determines that an amount of such debt is past due and legally enforceable;
 (4) satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under paragraph (3) with respect to such debt is valid and that the agency has made reasonable efforts ... to obtain payment of such debt; and
 (5) certifies that reasonable efforts have been made by the agency (pursuant to regulations) to obtain payment of such debt.

notice to the debtor was provided within the last year or within any specific period of time." Gov't Brief at 15. Instead, the government contends that they are required "to provide, at least annually, a written certification to FMS [a bureau of the Department of Treasury charged with operating the TOP program] stating that the debt continues to meet the requirements for referral to FMS and that all collections have been credited properly." *Id.*

 We begin by observing that when interpreting a statute, "the starting point is always the language of the statute itself." *United States v. Knox,* 32 F.3d 733, 744 (3d Cir.1994) (citing *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)). Where the statutory language is clear, Congress' words must be interpreted in accordance with their ordinary meaning and we must assume that the legislative purpose of the statute is expressed by the ordinary meaning of the words used. *See id.* On its face, § 3720A does not require that an agency give a debtor annual notice of its intent to intercept a federal income tax refund. § 3720A. Nor does the statute expressly provide that the debtor must have 60 days each year to contest the setoff prior to the DOT actually making the setoff. *Id.* Here, we find that the Bankruptcy Court has read into the statute a requirement for annual notice to the debtor that does not exist on its face. In fact, the Bankruptcy Court recognized as much and reached its conclusion as to the requirement for annual notice to the debtor inferentially. In articulating its rationale for concluding that the government was required to give annual notice to Huff, it went beyond the ordinary meaning of the plain language and inferred that Congress meant what it did not explicitly say.

Bankr.Op. at 6 ("Our view is that Congress . . . *meant* for an obligor to receive notice of a proposed tax offset each year.") (emphasis added).

 In order for a Court to legitimately go beyond the plain language of the statute, the ordinary meaning of the words must be ambiguous. *See American Tobacco,* 456 U.S. at 68, 102 S.Ct. 1534. As previously discussed, the statutory language in this case is not ambiguous. It is worth noting that Congress imposed an annual reporting requirement for the creditor agency *only* when reporting to the Secretary. Had Congress intended a separate annual notice requirement to the creditor, it could certainly have said so. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("[W]here . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.") (internal quotations omitted); *Compare* § 3720A(a) *with* § 3720A(b).

Both the operative framework of the TOP and certain agency regulations lend further support for the proposition that annual notice from the creditor agency to the taxpayer is not required. To begin the offset process, an agency contacts FMS and conveys its intent to recover on a past-due legally enforceable debt through administrative offset. 62 *Fed.Reg.* 34175, 34176. Before submitting the debt to FMS, the creditor agency must notify the debtor that their debt is delinquent and that the agency intends to collect the debt by offset. *Id.;* 26 C.F.R. § 301.6402–6(c)(4). In *that notice,* 62 *Fed.Reg.* at 34176, the creditor agency must also inform the debtor of her right to review the records and to seek review of the determination that the debt is past-due and legally enforceable. The notice must also apprise

the debtor of the 60–day window to review and present evidence. § 301.6402–6(c)(5). Importantly, all of these notice requirements occur *prior* to the submission of the debt to FMS. Once the creditor agency has certified to FMS that it has given the debtor the prescribed notice, and once FMS accepts the creditor agency's debt, FMS will begin to apply offsets to that debt. § 301.6402–6. Integral to the streamlining of this process that culminated in the merging of the programs into TOP, the offset process occurs continuously. 62 *Fed.Reg.* at 34176 ("The delinquent debt information will remain in the debtor database for continuous offset of tax refund and all other eligible Federal payments until debt collection activity for that debt is terminated.").

Moreover, the regulations promulgated by individual agencies pursuant to § 3720A are consistent with this interpretation. For instance, the under the Department of Education's regulations, 34 C.F.R. § 30.22 (entitled "What notice does the debtor receive before the commencement of offset?"), the agency must provide a debtor with the type of notice prescribed by the statutory language in § 3720A, *but* the regulations note, in section (d), that, "[i]f a debtor previously has been notified of the Secretary's intent to offset ... the Secretary may offset without providing the debtor with an additional notice of intent." *Id.* Additionally, the RHS's own implementing regulations only require that "a 60 day due process notice will be sent to borrowers subject to TOP or Cross–Servicing. The borrower will be given 60 days to resolve any delinquency before the debt is reported to Treasury." 7 C.F.R. § 1951.136.

The notice that must be given to debtors, then, occurs at the commencement of the debt submission process. That is, the agency must notify the debtor that it intends to collect its debt through the offset process. Once notified (and given an opportunity to respond) the debtor has been sufficiently apprised that this procedure will take place with any overpayment the debtor might be entitled to. This is the only notice, from the creditor agency, that the statutory provisions and corresponding regulations envisions.

▪ Importantly, we note that this procedure does not deprive the debtor of notice that an offset of her tax refund has been made. *Id.* ("After a tax refund offset occurs, FMS will notify the debtor that the offset has occurred."); *see also* § 301.6402–6(h)(1) ("The Service shall notify taxpayer in writing of the amount and date of the offset for a past-due, legally enforceable debt and of the Federal agency to which this amount has been paid or credited."). The regulations ensure that a debtor will receive prompt notice once an offset has been made. This notice must contain both the identity of the creditor agency requesting the offset and a contact point within the agency that the debtor may contact with any concerns. § 301.6402–6(h)(2). Thus we find that the Bankruptcy Court's premise that absent a more expansive reading of the statute, "an agency could give one notice and forever thereafter be entitled to intercept all tax refunds" is faulty. Bankr.Op. at 6. The TOP ensures that the debtor be given an opportunity, at the outset, to contest the validity of the past-due legally enforceable debt. Once that debt has been established, however, submission to TOP will operate to continually pay-off the debt. The debtor will be notified when an offset is made and, in the event that there does exist some problem, the debtor will be able

to contact an appropriate agency official. Nowhere in either the statute or the regulations is it contemplated that the debtor will receive notice both prior to each offset being made *and* notice after each offset has been made.[6] Such an interpretation would frustrate both the ordinary meaning of the statutory language and the streamlining efforts that the TOP reflects. We therefore will reverse the Bankruptcy Court's judgment holding otherwise.

## IV.

Because the Bankruptcy Court erred in determining that the government failed to comply with the notification requirements of 31 U.S.C. § 3720A, we do not reach the government's other arguments concerning the nature of the claimed offset, the waiver of sovereign immunity, or the permissibility of setoff of exempt property under title 11, but instead remand for further proceedings consistent with this opinion.

---

**6.** It is true that at least one court has noted, in passing, that an agency *did* send notices to the debtor prior to intercepting that debtor's tax refund. *See Bolden v. Equifax Accounts Receivable Servs.*, 838 F.Supp. 507, 509 (D.Kan.1993). However, this was not an issue in the case and the court did not address the significance of the agency's actions. The fact that some agency sent notices annually in no way establishes that Congress intended this to be the case. In fact, in *Bolden,* the Court noted that the statute requires the Federal agency to notify the debtor "[b]efore using th[e] procedure," *id.* at 508, suggesting that it recognized that the only statutorily proscribed notice must come before submitting the debt to the DOT. In light of the plain language of the statute establishing no annual pre-offset notice requirement, we do not find that the Bankruptcy Court's reliance on this case is well-placed.